# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DOROTHY MANZY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NO. 2:05-cv-395-ID-SRW |
| MONTGOMERY HOUSING AUTHORITY, | ) ) ) |
| Defendant. | ) ) |

## AFFIDAVIT

BEFORE ME, the undersigned, in and for said state and county, personally appeared **RUDY MARTINEZ**, who, being fully sworn, deposes and says as follows:

1. My name is Rudy Martinez. I am the Personnel Manager at the Montgomery Housing Authority (MHA). I am over the age of nineteen years and am competent to testify to the matters contained in this affidavit, which are true and correct and based on my personal knowledge. I have authority to make this affidavit on behalf of MHA.

2. I have worked for MHA for over 14 years and have been the Personnel Manager for the entire time that I have worked for MHA

3. MHA has eight housing communities: Cleveland Court, Gibbs Village, Riverside Heights, Tulane Court, Paterson Court, Trenholm Court, Smiley Court, and Richardson Terrace.

4. At one time, the managers of each housing community had assistant managers. Sometime around 2002, MHA went through a reorganization. During the

1/1437756.1

reorganization, MHA laid off all but four assistant managers due to lack of funding. Two of the four were assigned to the two largest housing communities, and two were used as floaters. The floating assistant managers did banking work and would fill for a manager who was absent.

5. The community workers were retained at each housing community. They were to continue with their job duties but were also to assist the managers to the extent possible by answering phones and greeting people.

6. Ms. Manzy was terminated in August 2004. Below is a list of the occupancy rates of the housing communities for July/August 2004 timeframe:

| Community | Total | Occupied |
|---|---|---|
| Riverside Heights | 647 | 396 |
| Gibbs Village | 502 | 488 |
| Smiley Court | 368 | 276 |
| Trenholm Court | 353 | 262 |
| Tulane Court | 299 | 254 |
| Paterson Court | 200 | 192 |
| Cleveland Court | 150 | 141 |
| Richardson Terrace | 100 | 72 |

7. The housing community that Ms. Manzy managed, Paterson Court, was the third smallest housing community and had the third lowest number of occupied units. The number of occupied units at Paterson Court was about 75% of the next largest housing community, Tulane Court, which had 254 occupied units. Ms. Manzy's community had about 39% of the occupied units at Gibbs Village and about 48% of Riverside Heights, the two largest communities where assistant managers were assigned. Ms. Manzy was responsible for managing fewer than half the number of occupied units than the two housing communities where assistant managers were assigned.

8.   Diane Bishop is the manager of Richardson Terrace. In August 2004, Ms. Bishop was the only Caucasian employed as a housing community manager; the other seven housing community managers were black females. The same is true today.

9.   In addition to the housing community managers discussed above, in August 2004 MHA had the following management-level employees: five African-American males, four white males, one Hispanic male, six African-American females, and four white females.

10.  One of the white female managers included Wendy Cochran. Wendy Cochran was MHA's Section 8 Housing Director until May 29, 2004, when she resigned. Ms. Cochran was replaced by Cathy Harris, a black female. With the Section 8 Department, HUD issues vouchers to MHA, and MHA issues them to participants in the Section 8 program. In this program, the federal government pays a portion of the tenant's rent to the landlord. As HUD issues more vouchers, the program grows and additional employees are added to the Section 8 Department. The more vouchers MHA receives, the more employees it needs to work in the Section 8 Department.

11.  Jill West, a white female, was the Public Information Officer at MHA until she resigned in 2005. She has not been replaced. She was not a management-level employee. The only assistance Ms. West had with her job included two interns. One intern was a student from Auburn University at Montgomery, and one was a student from Alabama State University. They did very little administrative work for Ms. West. They mostly wrote articles for MHA's newsletter. The interns were not employees of MHA and received no pay from MHA.

12. DeAnn Smith was the account clerk in the accounting department. She was not a management-level employee and did not have an assistant to help with her workload. Ms. Smith at one time was responsible for doing the posting and receiving of rental receipts. However, MHA's auditors suggested that MHA hire or reassign a new employee to do the posting of rental receipts because doing both the posting and receiving of rental receipts was not an accepted internal control. For this reason, the posting duties were separated from Ms. Smith's job and a new employee was hired to do the posting duties.

13. Kerry Revell was a community worker at MHA during the time of the Plaintiff's termination. She was not a management-level employee. Ms. Revell was originally hired to work at only one housing community. When one of the other community workers left, Mr. Revell had to take over a second housing community because budget cuts prevented MHA from immediately replacing the community worker who had left. When MHA later hired another community worker, Ms. Revell went back to being a community worker for only one housing community.

14. After Plaintiff was terminated, she appealed her termination, and a dismissal hearing was held before an administrative hearing officer, Tiernan Luck. Mr. Luck held that MHA acted appropriately in recommending the termination of Ms. Manzy. A true and correct copy of his decision is attached as Exhibit A.

15. Plaintiff then appealed to the City of Montgomery Personnel Board, and another hearing was held. The City of Montgomery Personnel Board also upheld MHA's decision to terminate Ms. Manzy. A true and correct copy of this decision is attached as Exhibit B.

16. On May 6, 2004, C. Michael ("Mickey") McInnish, MHA's Executive Director, issued a memorandum to all public housing staff informing them that HUD would be at the MHA during the week of July 19, 2004, to do a return visit and review MHA's files. A true and correct copy of this memorandum is attached as <u>Exhibit C</u>.

DATED this the _29_ day of March, 2006.

_____
RUDY MARTINEZ

STATE OF ALABAMA          )
                          )
COUNTY OF MONTGOMERY )

Before me, the undersigned authority, personally appeared RUDY MARTINEZ, who, being by me first duly sworn, doth depose and say that the matters and things contained in the above Affidavit are true and correct to the best of her information, knowledge, and belief.

Done this _29th_ day of March, 2006.

_____
Notary Public
My Commission Expires: NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 22, 2008
BONDED THRU NOTARY PUBLIC UNDERWRITERS

1/1437756.1

# Exhibit A



# TIERNAN W. LUCK, III
### ATTORNEY AT LAW

August 25, 2004

VIA FACSIMILE 206-7206

Mr. C. Michael McInnish
Executive Director
Montgomery Housing Authority
1020 Bell Street
Montgomery, AL 36104-3056

    RE: The Dismissal Hearing of Dorothy Manzy

Dear Mr. McInnish:

    On August 25, 2004 at 8:00 A.M., I presided over the dismissal hearing of Ms. Dorothy Manzy. This hearing lasted approximately 55 minutes. Present at the hearing was the employee, Ms. Dorothy Manzy and her attorney Norman Hurst, Jr. Also present, were two representatives from the Montgomery Housing Authority, Ms. Maxine Sledge, Ms. Manzy's supervisor, and Mr. Rudy Martines.

    After careful consideration of the evidence presented by the Housing Authority for the City of Montgomery, as well as the rebuttal testimony presented by the employee, Ms. Dorothy Manzy, it is my opinion that the Housing Authority has acted appropriately in recommending the termination of Ms. Manzy.

                            Sincerely,

                            Tiernan (Terry) W. Luck, III

TWLIII/nh

Cc: Norman Hurst, Jr. by facsimile
     Rudy Martines by facsimile

# Exhibit B

# CITY - COUNTY OF MONTGOMERY
# PERSONNEL DEPARTMENT
P.O Box 1111
Montgomery, Alabama 36101-1111

**PERSONNEL BOARD**
EDWARD F. CROWELL, CHAIRMAN
BENITA FROEMMING
CHARLES B. PATERSON

BARBARA M. MONTOYA
PERSONNEL DIRECTOR
KAREN B. CASON
ASSISTANT PERSONNEL DIRECTOR
TELEPHONE: 334-241-2675
FAX: 334-241-2219

October 1, 2004

Ms. Dorothy Manzy
7021 Eastern Shore Road
Montgomery, AL 36117

Dear Ms. Manzy:

The Personnel Board asked me to advise you that they upheld the Montgomery Housing Authority's decision to terminate your employment.

If I can be of further assistance, please let me know.

Sincerely,

Barbara M. Montoya
Personnel Department

Cc   Mickey McInnish, Esq.
     Chuck Stewart, Esq.
     Norman Hurst
     Mr. Rudy Martinez
     Personnel Board

An Equal Opportunity Employer
www.montgomerypersonnel.com

TOTAL P.02

# Exhibit C

## Montgomery Housing Authority

C. MICHAEL McINNISH
EXECUTIVE DIRECTOR

1020 BELL STREET • MONTGOMERY • ALABAMA • 36104-3056
(334) 206-7200 • (334) 206-7222 Fax • MHAToday.org

CLIFFORD HOLMES
CHAIRMAN

May 6, 2004

# MEMORANDUM

TO: **PUBLIC HOUSING STAFF**

FROM: **C. MICHAEL MCINNISH**

SUBJECT: **RIM REVIEW**

---

The HUD office will be back the week of July 19 to do a return visit RIM review of our operations. As you will remember, they were here last year and found numerous file errors which were corrected and submitted to HUD. We have had several sessions of training on proper file documentation and required items to be in the file. We have had two of the HUD staff in to do a day of training during which all community workers, managers and assistant managers were in attendance. Greg Price and I presented the new ACOP and changes in policies. Holly Poteete helped and did a section on record requirements. We have also had other training on these new policies prior to them being released to other housing authorities across the state.

Prior to the first RIM review, we had training sessions on file requirements and presented information on what issues HUD would be inspecting, including third party documentation, lease requirements, file requirements, policy compliance, rent calculations, etc. There were errors found, but we decided to use the corrections as a learning experience.

Early this year I asked Ms. Sledge to arrange to visit every community to do a quality control check of files to be sure we were in compliance with our policies, rent calculations, and file requirements. I have also asked that each file be reviewed during this interim period from the last RIM review for compliance.

Our Task Force has now presented the new policies and ACOP to the state at the state spring workshop. It was so helpful to have worked with our staff in training prior to this workshop. I trust that all have had a chance to review the policies in detail and are ready for implementation.

---



THOMAS TAYLOR, Vice-Chair
RICHARD H. BOLLINGER

JOHN F. KNIGHT Jr.
ANNE B. UPCHURCH

BETTIE BARNETT
RON DRINKARD

LUAH LONG
DAVID BARLEY II

Please review your files to be sure that all are in compliance with our policies, rules, regulations and requirements. If you should have any questions, email to me so I can get a response out to you. We have a little less than two months left to complete our preparation for the review. I hope that after the files are completely updated and made accurate that they can be kept in that fashion in the future.

Please remember the HTVN training sessions scheduled for June. I hope that all who have not received their PHM will be successful and that all who have this certification will take advantage of this opportunity. We have done a lot of training during the past several years and will continue to provide training as we have for the past twelve years.

Please let me know if you do not understand any of the areas relating to rent calculation, file requirements, federal requirements, or our policies. I am almost always available by email (mmcinnish@mhatoday.org) Please let me know any of your questions by next Wednesday so I can get your answers and schedule a meeting if necessary to again review our policies and requirements.

Please be ready for the RIM review. It is our goal to be 100% compliant with the rules and regulations.